UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| ANGELA MICHELE LOWRY, | ) | Civil Action No.: 4:22-cv-02879-TER |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | ORDER |
| MARTIN O'MALLEY[1], | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42

U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social

Security, denying Plaintiff's claim for disability insurance benefits(DIB) and supplemental security

income (SSI). The only issues before the Court are whether the findings of fact are supported by

substantial evidence and whether proper legal standards have been applied. This action is proceeding

before the undersigned pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. Proc. R. 73.

## I.  RELEVANT BACKGROUND

**A.      Procedural History**

Plaintiff filed an application for DIB and SSI in December 2019, alleging inability to work since

January 1, 2019. (Tr. 15).  Her claims were denied initially and upon reconsideration.  Thereafter,

Plaintiff filed a request for a hearing.  A hearing was held in December 2021 at which time Plaintiff and

a vocational expert (VE) testified.  The Administrative Law Judge (ALJ) issued an unfavorable decision

on January 21, 2022, finding that Plaintiff was not disabled within the meaning of the Act.  (Tr. 15-25).

---

[1] On December 20, 2023, Martin J. O'Malley became the Commissioner of Social Security. Pursuant to Fed. R. Civ. P. 25(d), he is automatically substituted for Defendant Kilolo Kijakazi who was the Acting Commissioner of Social Security when this action was filed.

Plaintiff filed a request for review of the ALJ's decision, which the Appeals Council denied in July 2022, making the ALJ's decision the Commissioner's final decision. (Tr.1-3). Plaintiff filed an action in this court in August 2022. (ECF No. 1).

**B.    Plaintiff's Background**

Plaintiff was born in May 1979 and was thirty-nine years old on the alleged onset date. (Tr. 24). Plaintiff has past relevant work experience as a hair stylist and nanny. (Tr. 24). Plaintiff alleges disability originally due to degenerate spine disease, uncontrollable sciatica muscle spasms, severe carpal tunnel syndrome, and bursitis. (Tr. 57). Pertinent medical records will be discussed under the relevant issue headings.

**C.    The ALJ's Decision**

In the decision of  January 21, 2022, the ALJ made the following findings of fact and conclusions of law (Tr. 15-25):

1.    The claimant meets the insured status requirements of the Social Security Act through March 31, 2024.

2.    The claimant has not engaged in substantial gainful activity since January 1, 2019, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3.    The claimant has the following severe impairments: lumbar degenerative disc disease, spondylosis, and canal stenosis; morbid obesity; hypertension; type II diabetes mellitus and diabetic peripheral neuropathy, right knee degenerative joint disease, carpal tunnel syndrome, and right hip degenerative changes (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work (lift and carry 10 pounds occasionally and stand and/or walk 2 hours, as defined in 20

CFR 404.1567(a) and 416.967(a)) except she needs the option to stand/walk for up to 5 minutes after sitting for an hour; she is able to occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl but is unable to climb ladders, ropes or scaffolds. She is able to frequently reach in all directions, handle and finger with bilateral upper extremities. She is not able to tolerate exposure to hazards such as unprotected heights and large moving machinery.

6.     The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.     The claimant was born on May 9, 1979 and was 39 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.     The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2019, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

## II. DISCUSSION

Plaintiff argues the ALJ erred in evaluating Dr. Ekunsanmi's opinions and argues this left the RFC unsupported. (ECF No. 12 at 1). The Commissioner argues that the ALJ's decision is supported by substantial evidence.

## A.     LEGAL FRAMEWORK

### 1.     The Commissioner's Determination–of–Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits,

who are not of retirement age, who properly apply, and who are under a "disability."  42 U.S.C. §

423(a).  Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be expected

to result in death or which has lasted or can be expected to last for at least 12 consecutive months.  42

U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated

under the Act have reduced the statutory definition of disability to a series of five sequential questions.

*See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the

"need for efficiency" in considering disability claims).  An examiner must consider the following: (1)

whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe

impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[2] (4)

whether such impairment prevents claimant from performing PRW;[3] and (5) whether the impairment

prevents him from doing SGA.  *See* 20 C.F.R. § 404.1520.  These considerations are sometimes referred

to as the "five steps" of the Commissioner's disability analysis.  If a decision regarding disability may

be made at any step, no further inquiry is necessary.  20 C.F.R. § 404.1520(a)(4) (providing that if

---

[2] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do.  The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525.  If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment.  20 C.F.R. § 404.1520(a)(4)(iii).  To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria."  20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[3] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. See 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

### 2.    The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases *de novo* or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir.1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence as a threshold is "not high;" "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

**B.    ANALYSIS**

**Dr. Ekunsanmi**

Plaintiff argues the ALJ erred in evaluating Dr. Ekunsanmi's opinions and argues this left the RFC unsupported. (ECF No. 12 at 1). While the RFC is an administrative assessment made by the ALJ based on all the evidence, which includes opinions from medical sources about what the individual can still do, persuasiveness of opinions is analyzed separately under the framework of 20 C.F.R. § 404.1520c. *See* SSR 96-8p. An ALJ must explain why an opinion is not adopted. SSR 96-8p. The ALJ performed these regulatory duties here.

For applications filed on or after March 27, 2017, such as this action, the regulatory framework for considering and articulating the value of medical opinions has been changed. *See* 20 C.F.R. § 404.1520c; *see also* 82 Fed. Reg. 5844-01, 2017 WL 168819 (revisions to medical evidence rules dated Jan. 18, 2017, and effective for claims filed after Mar. 27, 2017). Importantly, the new regulations no longer require any special significance be given to opinions by a treating physician. *See* 20 C.F.R. § 404.1527 (noting that the treating physician rule only applies to claims filed before March 27, 2017). The ALJ is not required to defer to or give any specific weight to medical opinions. 20 C.F.R. § 404.1520c(a). Instead, the ALJ should consider and articulate in the decision how persuasive each medical opinion is based upon the factors of: (1) supportability; (2) consistency; (3) relationship with the claimant(length, frequency, purpose, extent, and examining); (4) specialization; and (5) other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(b), (c). Supportability and consistency are the most important of the factors for consideration, and the ALJ is required to explain how he considered the supportability and consistency factors in evaluating opinion evidence. 20 C.F.R. § 404.1520c(a), (b)(2). An ALJ is not required to explain how the remaining factors were considered. 20 C.F.R. § 404.1520c(b)(2). In evaluating the supportability of an opinion, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). In evaluating the consistency of an opinion, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2).

In April 2020, Dr. Ekunsanmi completed a form designating the only diagnosis as lumbar degenerative disc disease and that Plaintiff's symptoms would frequently be severe enough to interfere

with attention/concentration required to perform simple tasks. (Tr. 514). Plaintiff needed to lie down

or recline in excess of typical breaks. Plaintiff could walk less than one block. Plaintiff could sit a total

of two hours and stand a total of two hours. Every two to three hours, Plaintiff needed to take a fifteen

to thirty minute long break. (Tr. 514). Plaintiff could never lift ten pounds. (Tr. 514). Plaintiff had no

reaching, handling, or fingering limitations, but then Dr. Ekunsanmi stated percentages for reaching and

manipulation. (Tr. 514).  Plaintiff would be absent once or twice a month. (Tr. 515).

> The ALJ found Dr. Ekunsanmi's opinions were not persuasive:

> The only diagnosis he listed on the form was lumbar degenerative disc disease. He opined that she could only sit 2 hours and stand 2 hours each in an 8-hour day, that she needed unscheduled breaks every 2-3 hours lasting 15-30 minutes, that she could frequently lift up to 10 pounds but never more than that, that she could only use her hands 50% of the time, her fingers 30% of the time, and her arms 20% of the time, and that she would be absent once or twice a month (Exhibit B8F). Dr. Ekunsanmi's assessment was of little persuasive value given that it was supported by neither his treatment notes, neither those of other treating nor examining[4] physicians. He saw the claimant infrequently; he only saw the claimant once a year in 2018, 2019, and 2020, which are the first three years the claimant alleges she was disabled. Moreover, his documented objective observations, which are reviewed in the foregoing paragraphs, were sparse. His treatment of the claimant was conservative and limited to medications. As a primary care physician, he did not refer her back to an orthopedic doctor for an impairment he opined was disabling, and the claimant has not attempted more aggressive forms of treatment such as injections, physical therapy, a TENS unit, or surgery. Accordingly, there was little support for the limitations he offered.

(Tr. 23). It is apparent the ALJ reviewed the required most important factors of supportability and

consistency. (Tr. 20-23). The ALJ reviewed Dr. Ekunsanmi's own treating notes which were infrequent

and with sparse observations on exam and that other treating or examining providers did not provide

consistency or support for the limitations given. The ALJ noted treatment was limited to medications;

---

[4] In October 2020, Dr. Das found Plaintiff had a fairly unremarkable exam except for thigh pain, had no limits in posturals, manipulation, reaching, or environment, could lift/carry 20 pounds because she said she could, and walk more than the 15 minutes Plaintiff reported. (Tr. 443).

treatment did not include specialist referrals, injections, physical therapy, TENS, or surgery. The ALJ

noted the record was reviewed "in the foregoing[5] paragraphs." (Tr. 23). The ALJ discussed in detail

Plaintiff's treatment records. (Tr. 20-23).

The ALJ noted in 2018 prior to the alleged onset date, Plaintiff saw Dr. Ekunsanmi for pain and

Gabapentin was helping her neuropathy. (Tr. 20). Dr. Ekunsanmi's August 2019 notes stated Plaintiff

wanted to discuss weight loss and received pain medication from the pain clinic. (Tr. 504). Plaintiff

reported she had seen an orthopedic who told her to lose weight, which Dr. Ekunsanmi stated: "exactly

what we've said time and time again." (Tr. 504). Plaintiff weighed 378 pounds. (Tr. 442). Plaintiff

examined in discomfort, as tender, and appeared stiff. (Tr. 504).  March 2019 MRIs showed mild canal

stenosis, mild strain, mild bursitis, mild narrowing, and moderate neuroforaminal narrowing. (Tr. 20).

At the next Dr. Ekunsanmi visit, Plaintiff was prescribed oxycodone. Then, for the once-a-year visit in

2020, there were no new findings on exam; the ALJ cited Exhibit B7F, Dr. Ekunsanmi's fourteen pages

of notes. (Tr. 21, 507).  The ALJ noted Dr. Ekunsanmi did not refer Plaintiff to a specialist or perform

more workup. Plaintiff never visited the emergency room for pain or treatment. (Tr. 21). In 2021,

Plaintiff saw an orthopedist because she fell and hurt her knee. (Tr. 21). In 2021, Dr. Ekunsanmi

continued to refill oxycodone where the exam showed no changes. (Tr. 21, 508). Plaintiff examined in

no apparent distress with no notations about tenderness or stiffness. (Tr. 508, 510).  "There were no

objective findings on the examination to correlate with an assessment of peripheral neuropathy." (Tr.

21). Plaintiff's argument that the ALJ only gave a terse conclusory one sentence statement as to Dr.

Ekunsanmi is belied by the ALJ's opinion. (ECF No. 12 at 9); (Tr. 20-23). Contrary to Plaintiff's

[5] An ALJ's decision is not read piecemeal; "we must read the ALJ's decision as a whole." *Keene v. Berryhill*, 732 Fed. Appx. 174, 177 (4th Cir. 2018); *Smith v. Astrue*, 457 Fed. Appx. 326, 328 (4th Cir. 2011).

argument, the ALJ did not ignore Plaintiff's knee surgery and carpal tunnel surgery from other doctors that resulted in improvement. (Tr. 20-21). Dr. Ekunsanmi's own opinion indicated it was related to a back diagnosis for which Plaintiff had not received treatment beyond medication.

Within this opinion argument, Plaintiff argues the ALJ erred by not including Dr. Ekunsanmi's opinions as RFC limitations. (ECF No. 12 at 12). An RFC is "an administrative assessment made by the Commissioner based on all the relevant evidence in the case record." *Felton-Miller v. Astrue*, 459 Fed. Appx. 226, 230-31 (4th Cir. 2011) (citing 20 C.F.R. §§ 404.1546(c), 416.946(c)). To determine the RFC, a provider's opinion is not required. The ALJ explained why the limitations opined by Dr. Ekunsanmi were unpersuasive and included in the RFC the limitations the ALJ found supported by the record, as the ALJ forms the RFC from the record as a whole. *See* SSR 96–8, *7; *Craig*, 76 F.3d at 595. The ALJ acknowledged the abnormal findings regarding tenderness and stiffness and provided a sedentary RFC.

Plaintiff asserts "there is no indication that Plaintiff's medications controlled or improved any of her symptoms." (ECF No. 12 at 11). Plaintiff testified her diabetes and blood pressure were under control. (Tr. 48). It appears Plaintiff is referring to the ALJ's statement and citation to Fourth Circuit case law that a disorder controlled with medication is not disabling. (Tr. 21). This sentence appears within a paragraph regarding no exam findings of neuropathy and diabetes being managed without insulin but with medication. In that same paragraph, the ALJ mentions Plaintiff received oxycodone for pain that persisted where exam findings did not change, and Plaintiff received conservative care of medication from her primary care provider Dr. Ekunsanmi. A facial reading of the entirety of the paragraph does not plausibly imply a conclusion that the ALJ considered Plaintiff's pain was fully controlled on medication, to read such into the statement is speculative. Further, the ALJ's sedentary

RFC with breaks every hour shows the ALJ credited Plaintiff's pain to the extent supported by the record.

The ALJ's finding—that Dr. Ekunsanmi's opinions of limitations in various areas were not supported by findings and were inconsistent with the record — is supported by substantial evidence as the records cited and discussed above provide support for the ALJ's finding and explanation of Dr. Ekunsanmi's opinion as unpersuasive. (Tr. 20-23). The ALJ supported this finding by reviewing the consistency and supportability factors of 20 C.F.R. § 404.1520c(b),(c), citing to treatment notes during the relevant period that did not support the severity of the limitations opined. Under the deferential standard of review applicable here, substantial evidence is not a high threshold. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The ALJ here performed the analysis under the applicable regulatory scheme and considered the factors most important to determining the persuasiveness of the opinions.

### III.  CONCLUSION

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence.  *Richardson*, 402 U.S. at 390.  Even where the Plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. *Blalock*, 483 F.2d at 775.  The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).  As previously discussed, despite the Plaintiff's claims, she has failed to show that the Commissioner's decision was not based on substantial evidence.  Based upon the foregoing, and pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four

of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405(g) and 1338(c)(3),

the Commissioner's decision is AFFIRMED.

s/ Thomas E. Rogers, III

February 14, 2024                          Thomas E. Rogers, III
Florence, South Carolina                   United States Magistrate Judge